IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PATRICIA MERRELL, | Case No. 1:20-cv-769 |
| Plaintiff, | JUDGE JAMES R. KNEPP II |
| v. | MAGISTRATE JUDGE THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Plaintiff, Patricia Merrell, seeks judicial review of the final decision of the Commissioner of Social Security, denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Merrell's application for DIB be affirmed.

**I.  Procedural History**

On May 21, 2018, Merrell applied for DIB. (Tr. 179-80).[1] Merrell alleged that she became disabled on June 6, 2011, due to "1. heart attack; 2. stroke; 3. memory problems; [and] 4. severe dizziness." (Tr. 179, 197). The Social Security Administration denied Merrell's application initially and upon reconsideration. (Tr. 63-72, 74-84). Merrell requested an administrative hearing. (Tr. 98-99). ALJ George D. Roscoe heard Merrell's case on October 16,

---

[1] The administrative transcript appears in ECF Doc. 13.

2019 and denied the claim in an October 25, 2019 decision. (Tr. 28-39, 50-62). On March 20, 2020, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). On April 9, 2020, Merrell filed a complaint to obtain judicial review. ECF Doc. 1.

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Merrell was born on August 5, 1959, and she was 51 years old on the alleged onset date. (Tr. 179). She completed 12th grade in 1977. (Tr. 198). She had past relevant work as a mortgage loan specialist from January 2000 to January 2010 and as a payroll specialist from August 2010 to October 2010. (Tr. 59, 198, 246).

### B. Relevant Medical Evidence

The ALJ's decision summarized the relevant medical evidence and Merrell's hearing testimony. (Tr. 31-39). Merrell does not challenge the ALJ's summary of the medical evidence or submit new evidence. *See generally* ECF Doc. 15. And an independent review does not reveal any material inconsistencies (other than those discussed below) between the ALJ's summary of the facts and the record before this Court. *Compare* (Tr. 31-39), *with* (Tr. 50-72, 74-84, 251-552). Thus, the court adopts and incorporates by reference the ALJ's summary of the medical evidence and hearing testimony.[2]

---

[2] *See Biestek v. Comm'r of Soc. Sec.*, No. 16-cv-10422, 2017 U.S. Dist. LEXIS 47762, at *2-3 (E.D. Mich. Feb. 24, 2017) (adopting an ALJ's summary of medical evidence and hearing testimony), *adopted by* 2017 U.S. Dist. LEXIS 47209 (E.D. Mich. Mar. 30, 2017), *aff'd by* 880 F.3d 7787 (6th Cir. 2017), *aff'd* by 139 S. Ct. 1148 (2019). *See also Paulin v. SSA*, 657 F. Supp. 2d 939, 942 (M.D. Tenn. 2009); *Hase v. Colvin*, 207 F. Supp. 3d 1174, 1177 (D. Or. 2016).

2

### C. Relevant Opinion Evidence

Merrell focuses her challenge on the ALJ's findings at Step Four of the sequential evaluation process, specifically, the manner in which the ALJ weighed the medical opinion evidence. Thus, notwithstanding the court's adoption of the ALJ's summary of the medical evidence, the court will separately discuss the medical opinion evidence.

#### 1. Treating Physician – Nelson D'Silva, MD

On July 31, 2018, Nelson D'Silva, MD, completed a checklist form "medical source statement," evaluating Merrell's physical capacity "as of 12/1/15." (Tr. 418-19). Dr. D'Silva opined that Merrell (1) could not lift or carry; (2) could only stand or walk for less than 10 minutes in an 8-hour workday; (3) could rarely climb, balance, stoop, crouch, kneel or crawl; (4) could occasionally reach and grossly manipulate objects, but only rarely push/pull or finely manipulate objects; (5) was not affected by environmental restrictions; (6) needed to be able to alternate between sitting, standing, and walking at will; (7) experienced mild pain that would take her off task and cause absenteeism; and (8) required unscheduled rest periods outside of a standard half-hour lunch and two 15-minute breaks. (Tr. 418-19). He noted that Merrell's ability to sit was not affected by impairment and that she had been prescribed a cane. (Tr. 418-19). In support of his opinion, Dr. D'Silva cited Merrell's left-sided weakness, vertigo, and neck and back pain, as well as her history of heart and back problems. (Tr. 418-19).

On May 3, 2019, Dr. D'Silva completed a checklist form "medical source statement – mental capacity." (Tr. 448-49). Dr. D'Silva indicated that Merrell had "marked" limitations in stating her own point of view; understanding and responding to social cues; responding to requests, suggestions, criticism, correction and challenges; working at an appropriate and consistent pace; completing tasks in a timely manner; working close to or with others without

3

being disruptive; sustaining an ordinary routine and regular attendance at work; and managing her psychologically based symptoms. (Tr. 448-49). She had "extreme" limitations in her ability to ignore or avoid distractions while working; working a full day without rest period greater than those allotted; responding to demands; and adapting to change. (Tr. 448-49).

Merrell had "moderate" limitations in understanding and learning terms, instructions, or procedures; describing work activity to another; asking and answering questions and providing explanations; recognizing and correcting mistakes; identifying and solving problems; sequencing multi-step activities; using reason and judgment to make work-related decisions; cooperating with others; handling conflicts; initiating or sustaining conversation; keeping social interactions free of irritability; initiating and performing a task that she knew how to perform; changing activities or work settings without being disruptive; distinguishing between acceptable and unacceptable performance; setting realistic goals; and making plans for herself independent of others. (Tr. 448-49). She had "mild" limitations in following one or two step oral instructions; asking for help when needed; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and take precautions. (Tr. 448-49). Dr. D'Silva explained that Merrell's mental limitations were the result of her major depression and associated symptoms. (Tr. 449).

On May 4, 2019, Dr. D'Silva prepared a second medical source statement on Merrell's physical capacity. (Tr. 450-51). He did not specify, however, whether his assessment reflected Merrell's abilities on, before, or after the date last insured. (Tr. 450-51). Dr. D'Silva opined that Merrell (1) could occasionally lift three pounds; (2) could stand for less than five minutes in an eight-hour work day; (3) could sit for one hour in an eight-hour workday; (4) could never climb, balance, push, or pull; (5) could rarely stoop, crouch, kneel, crawl, and reach; (6) could rarely

4

finely and grossly manipulate objects; (7) was restricted in her ability to work with heights, moving machinery, temperature extremes, and pulmonary irritants; (8) had been prescribed a cane and walker; and (9) did not experience pain. (Tr. 450-51). In support of his findings, Dr. D'Silva noted Merrell's dependence on her cane to move and balance, inability to control her gait, need to change posture, major depression and anxiety, chronic vertigo, and stroke. (Tr. 450-51).

### 2. State Agency Consultants' Opinions

On July 8, 2018, Steve McKee, MD, evaluated Merrell's physical capacity based on a review of the medical record. (Tr. 63-71). Dr. McKee determined that Merrell had a residual functional capacity ("RFC") to: (1) occasionally lift/carry 20 pounds; (2) frequently lift/carry 10 pounds; (3) stand/walk about 6 hours in an 8-hour workday; (4) sit about 6 hours in an 8-hour workday; (5) push/pull without limitation; (6) occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and (7) never climb ladders, ropes, and scaffolds. (Tr. 69-70). Dr. McKee noted that Merrell had postural limitations due to dizziness, no manipulative, visual, or communicative limitations, and her only environmental limitation was exposure to hazards due to her dizziness. (Tr. 70). On August 15, 2018, Indira Jasti, MD, concurred with the physical functional assessments in Dr. McKee's opinion. (Tr. 80-82). Both Dr. McKee and Dr. Jasti found that the "physical symptoms of weakness and fatigue are fully supported by and consistent with the evidence in the file." (Tr. 68, 79).

On initial review and reconsideration of Merrell's application, state agency psychological consultants Lisa Foulk, Psy.D., and Paul Tangeman, Ph.D., determined that there was insufficient evidence in the medical record to evaluate Merrell's mental functional capacity. (Tr. 67-68, 78-79).

5

**III. The ALJ's Decision**

On October 25, 2019, the ALJ issued a written decision denying Merrell's claim. (Tr. 28-39). The ALJ made the following paraphrased findings relevant to this appeal:

1. The date last insured was December 31, 2015. (Tr. 33).

5. Merrell had the residual functional capacity to perform sedentary work except she could not climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; not work in an environment with concentrated exposure to temperature extremes, humidity, or environmental pollutants; and not be exposed to hazards, such as heights, machinery, and commercial driving. She did not have severe mental limitations through the date last insured. (Tr. 35-36).

   Merrell testified at the hearing to vertigo, frequent falling down, memory problems, the need to use a cane, pain in her neck, a problem with her right hand causing her to drop things, and a spinning sensation if she turned her head. (Tr. 36). Merrell denied use of a walker. (Tr. 36).

   Merrell's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning their limiting effects were only partially consistent with the subjective and objective medical record for the prescribed period. (Tr. 36).

   The medical record showed that Merrell was admitted to the hospital in June 2011 with recurrent, increasingly frequent on-and-off chest pains in the preceding two months associated with shortness of breath. She also presented with symptoms of dizziness, vertigo and ataxia. She was admitted to the cardiac unit and treated with acute coronary symptom protocol and later underwent cardiac catherization. The catherization showed coronary artery disease, with significant mid-right coronary artery stenosis, mild segmental left-ventricular dysfunction, no evidence of renovascular disease, and moderate right iliac ASO. (Tr. 37).

   […] An MRI of Merrell's spine showed diffuse spondylosis, mild improvement of the degree of ventral cord deformity and left foraminal encroachment at C3-C4, multilevel ventral cord deformity and foraminal encroachment between C4 and C1, and moderate cord deformity at C4-C5. (Tr. 37).

   In her June 27, 2011, May 2012, and June 2013 follow-up visits, Merrell presented post-stenting, noting that she was doing "fairly well." On exam at each follow-up, no abnormalities were noted, and she was alert and oriented. (Tr. 37).

>Dr. McKee and Dr. Jasti were found to be unpersuasive. Their claim that there was insufficient evidence for them to evaluate Merrell's conditions during the prescribed period was inconsistent with the record, which, although not voluminous, was sufficient to make a determination that Merrell had severe impairments at the relevant time, but that they were not work preclusive. "While the DDS consultants have program knowledge, they lack a treating relationship with the claimant. For these reasons, the DDS consultants are unpersuasive." (Tr. 38).
>
>Dr. D'Silva's opinions were likewise found to be "unpersuasive" because his medical source statements were all completed well after the relevant period and did not adequately reflect Merrell's functioning during the relevant period. (Tr. 38). The ALJ noted that Dr. D'Silva "completed checklist type forms, noting that the physical assessments reflect the claimant's condition as of December 1, 2015 . . . . Again, this does not reflect the prescribed period, despite his treating relationship with the claimant. Additionally, Dr. D'Silva does not have program knowledge. For these reasons, the opinions are found unpersuasive." (Tr. 38).

6. Through the date last insured, Merrell could perform her past relevant work as payroll specialist and mortgage loan officer. (Tr. 38-39)

Based on all of his findings, the ALJ determined that Merrell was not disabled from June 6, 2011 through the date last insured. (Tr. 39).

## IV. Law & Analysis

### A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also

7

supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones*, 336 F.3d at 476. And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets this low standard for evidentiary support. *Rogers*, 486 F.3d at 241; *see also Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case de novo." (quotation marks omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error."). Furthermore, the court will not uphold a decision, when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn.

July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, her can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a).

### B. Step Four: Weighing of the Medical Opinion Evidence

Merrell argues that the ALJ failed to apply proper legal standards and reach a decision supported by substantial evidence when he "discounted" Dr. D'Silva's opinions. ECF Doc. 15 at 8-12. Citing the regulations for evaluating medical opinion evidence for claims filed before March 27, 2017 and related case law, Merrell argues that the ALJ's reasons for finding Dr. D'Silva's opinions unpersuasive did not constitute "good reasons" for discounting them. ECF Doc. 15 at 10; *see also* ECF Doc. 15 at 9-10. Merrell contends that the lack of program knowledge did not constitute a "good reason" to discount Dr. D'Silva's opinions because it was inconsistent with the ALJ's own decision to discount the non-treating source opinions for their

9

lack of a treating relationship and even though they possessed program knowledge, such that the ALJ failed to build an accurate and logical bridge between the evidence and the conclusion. ECF Doc. 15 at 10. She argues that the format of Dr. D'Silva's opinions did not justify discounting them because Dr. D'Silva specifically cited medical findings to support his conclusions. ECF Doc. 15 at 11. She contends that the ALJ's assertion that Dr. D'Silva's findings did not reflect her functional capacity during the relevant period was unfounded because under the factors set forth in 20 C.F.R. § 404.1527 his findings were well supported. ECF Doc. 15 at 11-12. Notably, she argues that Dr. D'Silva's opinion was consistent with: Dr. D'Silva's post-hospitalization records showing that Merrell reported weakness, vertigo, and dizziness; her pre-2011 medical records showing pain in her spine, weakness, numbness, and a restricted range of motion; and exam results showing diffuse spondylosis, ventral cord deformity, left-foraminal encroachment, and pronounced degeneration of the C4-C5 discs. ECF Doc. 15 at 11-12.

The Commissioner responds that the ALJ applied the proper legal standards in evaluating Dr. D'Silva's opinions and reasonably found them unpersuasive because Dr. D'Silva's opinions were issued years after the relevant period and were inconsistent with the objective medical evidence. ECF Doc. 17 at 9-11. The Commissioner asserts that Merrell's reliance on 20 C.F.R § 404.1527 and her arguments implying that deference was owed to Dr. D'Silva's opinions are misplaced because she filed her claim after March 27, 2017, when the administration's new regulations provided a different standard of review. ECF Doc. 17 at 10. The Commissioner contends that the ALJ's analysis comported with the governing regulation when he found that Dr. D'Silva's opinions were inconsistent with and unsupported by the objective medical evidence. ECF Doc. 17 at 10. The Commissioner argues that the ALJ reasonably found Dr. D'Silva's opinions unpersuasive because Merrell's post-hospitalization records showed that she

10

was doing "well" despite her history of vertigo and symptoms of dizziness; she endorsed no weakness; other than one MRI, there was no evidence of neck issues; and Merrell's spine MRI did not reveal pronounced degeneration. ECF Doc. 17 at 11.

### 1. Medical Opinion Evaluation Standard

At Step Four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating opinion evidence for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The pre-March 27, 2017, regulations required the ALJ to give "good reasons" for giving less-than-controlling weight to treating physician opinions. *See* 20 C.F.R. § 404.1527. But, as the Commissioner has pointed out, Merrell's reliance on those regulations is misplaced because Merrell filed her application for DIB *after* March 27, 2017. So, the post-March 27, 2017 regulations apply.

The post-March 27, 2017 regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). In doing so, the ALJ is required to explain how he considered the supportability and consistency of a source's medical opinions, but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). If the ALJ finds that two or more medical opinions "are both *equally well-supported and consistent* with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3)

11

(internal citations omitted) (emphasis added). "Other factors" that may be considered include: (1) the length, frequency, purpose, extent, and nature of the source's relationship to the client; (2) the source's specialization; and (3) the source's familiarity with the disability program and other evidence in the record. 20 C.F.R. § 404.1520c(c)(3)-(5). Consistency concerns the degree to which the opinion reflects the same limitations described in evidence from other sources, whereas supportability concerns the relevancy of objective medical evidence and degree of explanation given by the medical source to support the limitations assessed in the opinion. *See* 20 C.F.R. § 404.1520c(c)(1)-(2).

### 2. Analysis

The ALJ applied proper legal standards in evaluating Dr. D'Silva's opinions. The ALJ was not required to give any specific weight or deference to Dr. D'Silva's opinions. And the ALJ complied with the post-March 27, 2017 regulations when he explained that he found Dr. D'Silva's opinions unpersuasive because: (1) the opinions were issued well after the relevant period and, as a result, did not accurately reflect the claimant's condition during the relevant period; (2) the opinions were on a checklist-type form; and (3) Dr. D'Silva did not have program knowledge.[3] (Tr. 38). Although these reasons do not fit neatly into the "first assess consistency and supportability, then consider other factors" framework that the post-March 27, 2017 regulations provide, 20 C.F.R. § 404.1520c(b)(2), the regulations do not require the ALJ to issue

---

[3] The undersigned notes the presence of unacceptable carelessness in the ALJ's decision. On the one hand, one paragraph of the ALJ's decision repeatedly referred to Claimant Merrell in the masculine gender (Tr. 36), followed by numerous references to her in the feminine gender (*Id.*). And that's not all. One could hardly fault Merrell for feeling the presence of a double standard. ALJ Roscoe rejected the opinion of Merrell's treating physician, in part, because he set forth his opinions on "checklist type forms." (Tr. 38). Yet the ALJ's own opinion contained the statement "As for the claimant's statements about the intensity, persistence, and limiting effects of *his or her* symptoms . . . ." (Tr. 36, emphasis added). Claimants deserve more careful treatment by the Commissioner than the apparent standard, "forms for me but not for thee."

12

a perfect decision. And the explanation satisfies the purposes of the regulations by providing: (1) a statement as to *how* the ALJ treated the opinions; and (2) an explanation as to *why* the ALJ treated the opinions the way he did. *See* 20 C.F.R. § 404.1520c(a)-(b); *Fleischer*, 774 F. Supp. 2d at 877.

The issue before the Commissioner was whether Merrell submitted evidence demonstrating that she was disabled during the period between her alleged onset date (June 6, 2011) and her date last insured (December 31, 2015)[4]. Thus, the ALJ's first criticism – that Dr. D'Silva's opinions were completed "well past the prescribed period" – bears upon the supportability of Dr. D'Silva's opinions. 20 C.F.R. § 404.1520c(c)(1) provides: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." Implicit within the ALJ's criticism that Dr. D'Silva opinions were rendered years after the relevant period is that his conclusions were simply not relevant.

The sufficiency of the ALJ's evaluation of Dr. D'Silva's opinions is not found solely by undertaking a critical review of the single paragraph of the decision devoted to expressing the conclusion(s) concerning that evaluation. Instead, the ALJ was required to evaluate all the evidence submitted. Here, there is no question that he reviewed Dr. D'Silva's records and cited the findings from Merrell's office visits during the relevant period. (Tr. 37). Notably, none of those records provided any insight concerning Dr. D'Silva's opinions about any functional limitations Merrell had been experiencing[5].

---

[4] The alleged onset date and date last insured are not in dispute; they are recorded in the ALJ's decision. (Tr. 31).

[5] For example, in a May 22, 2012 visit, Merrell reported having vertigo, for which she was prescribed Antivert. (Tr. 399). By the time of her next visit to Dr. D'Silva on June 6, 2013, there was no mention of vertigo and no indication Merrell was still being prescribed Antivert. (Tr. 398).

13

The ALJ stated that the opinions in Dr. D'Silva's medical source statements "do not adequately reflect the claimant's functioning in [the relevant] period." (Tr. 38). In the ALJ's description of the medical record, he summarized the findings from Merrell's June 2011 hospitalization for cardiac stent placement, noting nothing about any functional limitation findings. In his description of Merrell's follow up visits to Dr. D'Silva, the ALJ noted the minimal findings of someone who self-reported to be "doing fairly well." (Tr. 37). Thus, the ALJ's conclusion that Dr. D'Silva's opinions did not reflect Merrell's functioning during the relevant period was his finding that the opinions were not supported by the evidence in his medical records. Substantial evidence supports the ALJ's conclusion that Dr. D'Silva's July 2018 opinions did not reflect Merrell's condition during the relevant period. Such evidence includes: (1) examination findings that she was alert and oriented and had normal heart, joint, and sensory functions during the relevant period; (2) diagnostic imaging showing generally normal, improved, and mild or "trivial" findings in her heart, brain, kidneys, and cervical spine; and (3) Merrell's treatment statements that she was doing "fairly well." (Tr. 37) (citing Tr. 272, 274, 278, 284, 287, 292, 398-99, 401, 447).

The ALJ's third criticism of Dr. D'Silva's opinion – that he lacked program knowledge – is also an "other factor" that an ALJ may consider. *See* 20 C.F.R. § 404.1520c(b)(5). Moreover, courts have agreed that each of the foregoing reasons may justify an ALJ's decision to discount a physician's opinions. *See*, *e.g.*, *Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 477 (6th Cir. 2018) ("Post-date-last-insured medical evidence generally has little probative value unless it illuminates the claimant's health before the insurance cutoff date."); *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850 (6th Cir. 2020) (treating source opinion issued after the date last insured was properly discounted when the opinion contained "no reference" to the claimant's condition

14

during the relevant period); *cf. Jones v. Comm'r of Soc. Sec.*, No. 1:19-cv-1076, 2020 U.S. Dist. LEXIS 30172, at *34 n.4 (N.D. Ohio Feb. 21, 2020) (explaining that, although not a "good reason" for discounting a treating physician's opinion, lack of program knowledge was a regulatory factor under that an ALJ could consider in determining the *ultimate weight* to give a medical opinion).

The ALJ's second reason for rejecting Dr. D'Silva's opinions – that they appeared on checklist forms – is more problematic than his first two reasons. If evaluated superficially, the checklist format of an opinion could be considered a reasonable basis upon which to discount a physician's opinions because checklist opinions might lack *supportability* (*i.e.*, references to treatment findings that support the prescribed limitations). *See* 20 C.F.R. § 404.1520c(c)(2). But, in this case, the ALJ did not explain that the checklist form of Dr. D'Silva's opinions rendered the opinion unsupported or otherwise explain why the format of Dr. D'Silva's opinions mattered. *See generally* (Tr. 38). Arguably, this lack of explanation resulted in a failure to build a logical and accurate bridge between the evidence and this particular basis for discounting Dr. D'Silva's opinions. *Fleischer*, 774 F. Supp. 2d at 877. Nevertheless, because the ALJ provided other reasons that could independently justify discounting Dr. D'Silva's opinions, any error in failing to explain why the checklist form of Dr. D'Silva's mattered was harmless. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (An error in weighing medical opinions is harmless when "the Commissioner has met the goal of [the regulations] – the provision of the procedural safeguard of reasons.")

The ALJ's decision to discount the weight given to Dr. D'Silva's opinions is supported by substantial evidence, even though his decision to discount the opinions because the doctor filled out checklist forms might not have been standing alone. Because Dr. D'Silva's July 31,

15

2018 opinion specifically stated that he was assessing Merrell's condition as of December 1, 2015 – which was within the relevant period – the fact that the opinions were authored nearly three years later alone would not have been enough to discount the opinions. But that is not all the ALJ did. As noted above, he also discussed the few treatment records from Merrell's visits to Dr. D'Silva between June 2011 and December 2015. On the other hand, substantial evidence does support the ALJ's conclusion that Dr. D'Silva's May 3 and 4, 2019 opinions were not temporally relevant because: (1) they did not contain any language indicating that he limited his assessment to the relevant period; and (2) they were issued well after the relevant period. (Tr. 448-51).

Although the ALJ could have more fully elaborated his reasons for discounting Dr. D'Silva's opinions, nevertheless substantial evidence did support: (1) the ALJ's finding that Dr. D'Silva's July 2018 and May 2019 opinions did not reflect Merrell's condition during the relevant period (*i.e.* they were unsupported by the objective evidence in the record); and (2) the ALJ's finding that Dr. D'Silva's May 2019 opinions were not temporally relevant. *Biestek*, 139 S. Ct. at 1154. And, because the ALJ's reasons for discounting each of Dr. D'Silva's opinions were both supported by substantial evidence and could independently justify his decision to discount the opinion, the ALJ's mention of other reasons that were less compelling was harmless. *Wilson*, 378 F.3d at 547. Thus, even if a preponderance of the evidence might have supported a different conclusion, the ALJ's decision to discount Dr. D'Silva's opinions fell squarely within the Commissioner's "zone of choice" and cannot be second-guessed by this court. *O'Brien*, 819 F. App'x at 416; *Jones*, 336 F.3d at 476-77; *Mullen*, 800 F.2d at 545.

16

### C. Step Four: Medical Judgment and the RFC Determination

Merrell next argues that the ALJ made improper medical determinations when he "substituted the medical experts' opinion regarding [her] functional capacity with [his] own findings." ECF Doc. 15 at 12-14. Merrell contends that the ALJ "exceeded his role by exercising medical expertise []he did not have in interpreting raw medical data to determine [her RFC] and by determining disability on an incomplete record which contained no medical [RFC] assessments." ECF Doc. 15 at 13. Merrell concludes that, therefore, "the decision erred when it made a determination regarding [her RFC] without basing it in the findings of a medical expert." ECF Doc. 15 at 13.

The Commissioner responds that Sixth Circuit precedent does not require an RFC to be based on a physician's opinion. ECF Doc. 17 at 12. The Commissioner further argues that the ALJ did not impermissibly "interpret raw medical data" because the ALJ cited to treatment records and objective evidence, noting that the regulations require that the ALJ evaluate the medical evidence to determine whether the claimant is disabled. ECF Doc. 17 at 12. The Commissioner notes that the imaging evidence had already been interpreted by other doctors. ECF Doc. 17 at 12.

The Commissioner is correct that the Sixth Circuit has "rejected the argument that an [RFC] determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018). The RFC determination "is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner." *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017). And an ALJ does not err by not grounding his RFC determination in a physician's opinion of what the claimant's functional

17

limitations are. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base [his] RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." (quotation marks omitted)).

Merrell is correct that an ALJ cannot interpret *raw* medical *data*. *Jacobs v. Colvin*, Case No 5:15-cv-00376, 2016 U.S. Dist. LEXIS 16274 at *37 (N.D. Ohio Feb. 10, 2016). But aside from asserting that the ALJ did so in her case, Merrell has not explained *how* the ALJ analyzed *raw medical data* or pointed to facts in the record supporting that proposition. Merrell cannot, therefore, prevail on that argument. *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013) ("Issues adverted to in a perfunctory manner, without some effort to develop an argument, are deemed forfeited."). Even if the court were to independently review this issue, it does not appear that the ALJ interpreted *raw medical data*, but instead properly relied upon objective interpretations of diagnostic imaging and examination findings in assessing Merrell's functional capacity during the relevant period. *See* (Tr. 35-38).

As for Merrell's assertion that the ALJ made an RFC determination based on an incomplete record, the ALJ is partly responsible for developing the record. *See generally* 20 C.F.R. §§ 404.1512(b)(1)-(2), 404.1517-404.1519b, 404.1545(a)(3). That duty arises when there is insufficient evidence for the ALJ to make a disability determination. 20 C.F.R. § 404.1519a. However, Merrell has not specifically argued that the ALJ failed to develop the record. And her perfunctory assertion that the ALJ made an RFC determination based on an incomplete record, without more, is insufficient to properly raise this issue. *Williamson*, 731 F.3d at 621. Because Merrell has not carried her burden to show that the ALJ failed to apply proper legal standards in

18

how he assessed the medical evidence in the record and arrived at his ultimate RFC finding, the Commissioner's final decision must be affirmed.

## V. Recommendation

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, I recommend that the Commissioner's final decision denying Merrell's application for DIB be AFFIRMED.

Dated: March 16, 2021

Thomas M. Parker
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).